## No. 11,659.

SHAW, ADMINISTRATOR *v*. PIONEER STATE BANK, ET AL.

Decided May 23, 1927. Rehearing denied June 13, 1927.

Action to quiet title. Judgment for defendants.

*Affirmed.*

1. QUIETING TITLE—*Possession by Force.* The court suggests that obtaining possession of real property by force or unfair means might justify a ruling by the trial court that such possession did not lay a foundation for an equitable action to quiet title.

2. TAXES AND TAXATION—*Certificate of Sale—Assignment.* Under statutes in force at the time of bringing the instant case, the county clerk had power to assign certificate of tax sale issued to the county.

3. *Tax Deed—Recitals.* Positive affirmative recitals in a correcting tax deed must prevail over former recitals in an invalid first deed.

4. *Certificate of Sale—Payment of Taxes.* A tax deed is not invalid because of failure of the holder of the tax certificate upon which it is based to pay subsequent taxes, where they were voluntarily paid by others.

5. *Tax Sale—Assignment of Certificate.* Assignment of tax sale certificate by county clerk held not invalid for inadequate consideration where the county commissioners had power to and did fix the amount.

6.      *Tax Sale—Deed.*  Contention that a tax deed was void because it did not appear that the property was offered for sale at any other time than on the date it was struck off to the county, overruled.

7.      *Tax Deed—Recitals.*  Recitals in a tax deed must be taken as true in the absence of evidence to the contrary.

*Error to the District Court of Weld County, Hon. Claude C. Coffin, Judge.*

Mr. JOHN T. BOTTOM, Mr. PAUL F. IREY, for plaintiff in error.

Mr. ARTHUR E. RYMAN, for defendants in error.

*Department Two.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

PLAINTIFF'S theory of the case is that the action is one to quiet title to real estate. Although the court found that the plaintiff's possession was surreptitiously obtained for the purpose of bringing the action, and may be deemed a trespass, and although the possession thus acquired was held by a display, at least, of firearms, yet, for the purpose of its decision, which was in defendants' favor, the trial court adopted the plaintiff's theory and assumed that, so far at least as concerns possession, the plaintiff was entitled to bring and maintain the action. We shall, therefore, dispose of the case on its merits, as did the trial court, whose judgment must be affirmed. Notwithstanding our decision in *Sayre v. Sage,* 47 Colo. 559, 108 Pac. 160, an action to quiet title, that when a plaintiff in taking possession commits no violence and does not use unfair or corrupt means but, at most, obtains possession by trespass, possession so obtained is sufficient for maintaining the action, we cannot forbear the suggestion that here there were at least

such a display of force and such use of unfair means as might justify a ruling by a trial court that such unlawful invasion and retention of possession of the property of another does not lay the foundation for an equitable action. 5 R. C. L., p. 651, sec. 20.

The plaintiff in error sues as administrator of the estate of his deceased sister, Annie V. Armstrong, formerly Annie V. Shaw, and as one of her heirs at law. He first obtained from the county court of Weld county, in which her estate is in process of probate, an order authorizing the suit. The material facts out of which this action grew may thus be stated: Plaintiff's sister was the patentee of the land in dispute, her patent being issued June 13, 1899, and duly recorded. The defendant bank claims title under a tax deed. The Weld county taxes on this land for the year 1899 were not paid. At the tax sale of the land on December 10, 1900, for these delinquent 1899 taxes, there was no bid by a proposed purchaser, and, under the statute, the county treasurer struck off the same to Weld county. No redemption from the sale having been made, a tax deed was issued to the assignee of the tax certificate and recorded on the same day, December 19, 1903. The assignment of the tax certificate was made by the county clerk, December 15, 1902. The claimant under the tax deed evidently deeming the first tax deed void, as the trial court held that it was, obtained a second tax deed from the then county treasurer, based upon the same assigned certificate of sale, to cure the defects in the first tax deed. This second tax deed was issued October 19, 1911, and recorded the following day, October 20. We shall assume with the trial court that the first tax deed was fatally defective and consider only the second tax deed. The various objections made by the plaintiff thereto will be disposed of in their order.

The first assignment of error is that the second deed is void on its face because the county attempted to assign the certificate of sale on the 15th day of December, 1902, by the clerk of the county; whereas it is said that

chapter 3, section 177, S. L. 1902, at page 133, the law then and now in force, provides that the treasurer is the only county officer who may sell, assign or deliver a tax sale certificate. It is further said that section 181 of the same chapter, at page 137, prescribing the form of a treasurer's deed, contains a provision to the same effect that the county treasurer only may make an assignment of the certificate. We are cited to *Poage v. Rollins,* 24 Colo. App. 537, 135 Pac. 990, which is said to hold that though section 166, page 319, S. L. 1901, authorizes the county clerk under certain conditions to make such assignment, this section was repealed by the act of 1902, which vests power of assignment solely in the treasurer. In this Poage case there was an entire omission in the tax deed of the name of the officer, (or his official title), who made the assignment, and the real decision was that because of such failure the deed was void on its face. The further observation of the court that the 1901 act was repealed by the act of 1902, was clearly obiter, in so far as the decision has any bearing upon the case now under consideration. But if it be conceded that the statute of 1902 repealed all former statutes which authorized the county clerk to make assignments, and under the 1902 act the county treasurer is the only public officer who has such power, it is altogether clear that the rights of the parties here, and the validity of the second tax deed, are not to be determined by the Act of 1902. The statute in force at the time the tax sale was held on December 10, 1900, was the delinquent tax statute of 1894, passed at the extra session of the Nineteenth General Assembly. Section 5 of that act provides in express terms that when the county treasurer has bid off any tract of land for the county he shall issue to the county a certificate of purchase therefor. And further, when any person thereafter deposits with the treasurer the proper amount due upon the certificate, the clerk of the county shall assign the certificate to such person.

A reading of these different statutes shows that the law of 1894 concerning such certificates was re-enacted in 1901 in almost the same language. The act of 1901, as well as the 1894 act, authorizes the county clerk to assign the certificate of purchase. The law of 1902 re-enacts many of the provisions of the 1901 act, but does not expressly re-enact the section relating to assignments. The saving clause of the 1902 act, which is substantially the same as the saving clause of the 1901 act, provides that the act shall not be held to apply to, or in any manner affect, any previously issued tax certificate, levy, tax sale, tax deed, etc., but that the effect and validity thereof in any cause now pending in any court of this state or to be brought under the provision of any law repealed by this act upon anything prior to the repeal of said act, or parts of acts hereby repealed, the same shall be held, conducted, inquired of, adopted and determined as provided for by the laws in force before and at the time this act takes effect. This saving clause, as held by the trial court, makes the rights of the parties as to the tax deed and the tax certificate and its assignment determinable by the law of 1894, which in these particulars is the same as the act of 1901, which authorizes the county clerk to assign tax certificates. The saving clauses of the 1901 and 1902 acts are substantially in the same language. The plaintiff's position is that the act of 1902 repealed expressly or by necessary implication, the corresponding sections of the earlier acts, which purport to vest in the county clerk power to assign certificates of tax sales. If that is so, then it necessarily follows that the assignment by the county clerk of the tax certificate in this case, on December 15, 1902, is valid because the act of 1902, in its saving clause, says its validity is to be determined by the laws in force before and at the time the 1902 act took effect. These previous acts authorized county clerks to assign such certificates. The decisions and the statute relied upon by the plaintiff are not applicable.

The plaintiff says that the tax sale was not made on the day as prescribed by statute. He also says that there is an affirmative recital in the first or void tax deed that the sale was made on an improper day and that the correcting or second deed contains a negative recital that the sale was on a proper day. Plaintiff invokes the announcement in *Johnson v. Gibson,* 24 Colo. App. 392, 133 Pac. 1052, that a negative recital in a valid second or correcting deed cannot prevail against the fatal affirmative recitals of an invalid first deed. The inapplicability of the Johnson case is apparent when it is considered that the recitals of the second and correcting deed in this case are not negative but positive and affirmative recitals. They must prevail over the former recitals of the invalid first deed.

Another objection to the validity of the second tax deed is that upon its face it appears that the assignee paid no subsequent taxes. The recital in the second deed is that no subsequent taxes accrued on the real estate after the first sale to increase or augment the amount paid by the holder or holders of such certificate because of the payment of such taxes by volunteers. We think this is a sufficient recital. If no subsequent taxes accrued that the holder of the certificate could pay, or if volunteers paid these taxes, that is a sufficient recital to obviate the objection urged. If the recital is not true, the plaintiff in this case should have produced evidence of its untruth.

Another objection is that the certificate was assigned by the clerk for a sum of money less than that prescribed by law. If we assume with counsel that this matter is to be determined by the act of 1902, it is not authority for plaintiff's contention. That statute, section 177, page 133, chapter 3 of the Session Laws of 1902, provides for an assignment of the certificate upon payment of certain specified sums of money, and then says: "or for such sum as the board of county commissioners at any regular or special meeting may decide." The record

does not sustain the contention that the assignment was made for a less sum than the law requires, or that the county board did not correctly decide upon the amount of the payment.

Another objection is that the second tax deed is void because it does not appear that the property was offered for sale at any other time than on the date that it was struck off to the county. To this are cited *Poage v. Rollins,* 24 Colo. App. 537, 135 Pac. 990; *Bryant v. Miller,* 48 Colo. 192, 109 Pac. 959; *Charlton v. Toomey,* 7 Colo. App. 304, 43 Pac. 454. Counsel are mistaken in the statement that the second tax deed is defective in this particular. It recites that the first day's sale of taxes was on the 8th day of December, and a continuance was had over Sunday from the 8th day until the following Monday, the 10th day, when this sale was made. Aside from this the cases relied upon are not authority for the proposition. They are expressly overruled as to this point in *Imperial Securities Co. v. Morris,* 57 Colo. 194, 141 Pac. 1160. The facts are not as the plaintiff contends. The second deed does show the date of the previous offer and no sale, and a proper continuance when the sale was made. As matter of law the Morris case, supra, is against plaintiff's contention. Whatever the law of the state may be now is not controlling, as to the time when sales must be made, and does not affect this case because, under the statute as it existed at the time that sale was made, there was a complete compliance therewith in this case.

Notwithstanding the repeated assertions of counsel that the second treasurer's deed is not in conformity with the controlling statute, we think it recites all of the necessary steps to show a good, valid and subsistent treasurer's deed. Indeed, counsel for the plaintiff is disposed to criticise the same upon the ground that it was prepared with such meticulous care as to evidence a too studied effort on the part of the draftsman to make it unobjectionable. If there was any misstatement of

fact in that second deed it has not been made to appear by any evidence in behalf of plaintiff and we must take its recitals as true.

There are other considerations and strong equities in favor of the defendants that might be stated, but we deem the foregoing discussion sufficient to show that no prejudicial error was committed by the trial court either in its findings or in its decree. The rights of the Mountain States Investment Company, one of the defendants, were not determined by the trial court and are not considered by us. The judgment is legally and equitably right and it is affirmed.

MR. JUSTICE DENISON sitting as Chief Justice, MR. JUSTICE ADAMS and MR. JUSTICE BUTLER concur.